IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>APPLE IPHONE RECOVERED DURING THE ARREST OF BRYAN NOEL<br><br>(“**TARGET DEVICE**”). | Magistrate No. 26-1079 |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER
RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Richard Forte, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property— a wireless telephone — which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and have been employed there since August of 2021.  Prior to my employment with ATF, I served in the Fairfax County Fire Marshal's Office since May of 2018.  As part of the Basic Law Enforcement for Fire Marshals curriculum, I received training in legal procedure, the preparation and execution of search warrants, arrest techniques, and use of force among others. During my time as an Assistant Fire Marshal, I prepared and executed search warrants, conducted arrests, and testified as an expert.

3.      Furthermore, I have graduated from the Federal Law Enforcement Training Center's Criminal Investigator Training Program and ATF's Special Agent Basic Training where I received instruction on drug and firearm identification, Federal Criminal Procedure and Titles

1

18, 26, and 21 of the Code of the United States, among others.  During my time at ATF, I have conducted investigations into the illegal possession of both firearms and narcotics and the trafficking of these items.

### PURPOSE OF APPLICATION AND AFFIDAVIT

4.      This application and affidavit are submitted in support of a search warrant for the cell phone, as described below, associated with Bryan NOEL (NOEL).

5.      Accordingly, law enforcement has probable cause to believe that a search of these facilities will produce fruits of, or evidence of, violations of federal felony offenses including felon in possession of a firearm in violation of Title 18, United States Code, Section 922(g)(1), and trafficking of firearms in violation of Title 18, United States Code, Section 933(a)(2) (the "TARGET OFFENSES").

6.      As explained below, there is probable cause to conclude that evidence of the TARGET OFFENSES will be in the cellular telephone associated with NOEL, which is the subject of the requested search warrant.

7.      The statements contained in this affidavit are based primarily on discussions with other law enforcement agents and witnesses, information provided to me by other law enforcement agents, review of documents and records, and my personal knowledge, observations, experience, and training.  This affidavit is being submitted for the limited and specific purpose of supporting an application for the requested search warrant.  I have not, therefore, included every fact known to me concerning the investigation.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

8.      Your Affiant seeks a search warrant for an Apple iPhone which was recovered during the arrest of Bryan NOEL ("**TARGET DEVICE**") and is pictured below (*Figures 1 and 2*):



*Figure 1: Phone recovered from NOEL*



*Figure 2: Rear of Phone with case recovered from NOEL*

9.    The **TARGET DEVICE** was recovered on June 30, 2026, during Pittsburgh Bureau of Police (PBP) incident PGHP26099108 and is currently in the custody of Pittsburgh

Bureau of Police's (PBP) Computer Crimes Unit. The **TARGET DEVICE** is further identified and described in Attachment A. The applied-for warrant would authorize the forensic examination of the **TARGET DEVICE** for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

10.     On June 30, 2026, members of Pittsburgh Bureau of Police's (PBP) Zone 5 were on a directed patrol of the East Hills area of Pittsburgh. This area, specifically the East Hills Apartments, has had a recent uptick in acts of violence and other disturbances. Furthermore, this area is known to have ties with the group known as OTS/Driveboyz/Jackboyz who are known to conduct acts of violence. During this patrol, officers observed a group of individuals outside playing music and openly consuming alcohol. Officers immediately recognized Bryan NOEL and are familiar with his ties to the Jackboyz. These officers are aware that NOEL is hypervigilant to PBP's presence in the area. As officers turned their police vehicle around to approach the group, NOEL began to blade away from officers and separate himself from the group. NOEL walked in a manner that would conceal his body. As he continued to walk, NOEL would conceal himself behind objects such as a parked car. Based on my training and experience, this is consistent with someone trying to conceal a firearm.

11.     As officers exited their patrol vehicle, NOEL was ordered to stop but did not comply. As officers then continued to issue commands, NOEL again disregarded commands and quickly walked up the stairs to enter the 2350 building of East Hills Apartments. After entering the building, NOEL increased his speed in an effort to avoid police. As NOEL exited near the 2350 East Hills Drive parking lot, he was seen discarding a black handbag with both hands.

Members of law enforcement had seen NOEL with this bag previously.   Members of law enforcement detained NOEL shortly after.

12.     Officers then began to retrace NOEL's path of travel and discovered the handbag in the front yard of the lower-level apartment.  This yard was near the location where NOEL was seen throwing the handbag.  Officers recovered the discarded bag and observed a Smith and Wesson revolver inside.  Members of Zone 5 also recovered a black Apple iPhone with a black case, the **TARGET DEVICE**, in the hallway where NOEL fled.

13.     Upon examination of the firearm, officers determined it to be a Smith and Wesson .357 caliber revolver bearing serial number 48K3947.  This firearm was loaded with 6 rounds of .357 caliber ammunition.

14.     On January 26, 2022, NOEL pleaded guilty to one count of Aggravated Assault and one count of Firearm Carried without a License.  These charges are punishable by more than one year in prison and therefore prohibit NOEL from possessing firearms and ammunition under Title 18, United States Code, Section 922(g)(1).   Furthermore, NOEL would be prohibited from receiving this firearm under Title 18, United States Code, Section 933(a)(2) as he is aware that the possession of this firearm would constitute a felony due to prohibition on possessing the firearm or ammunition.

### SUMMARY REGARDING USE OF MOBILE PHONES AND ONLINE ACCOUNTS/APPLICATIONS IN CONNECTION WITH CRIMINAL ACTIVITY

15.     Based on my training and experience, I am aware that individuals who cannot legally purchase firearms often have to either illegally purchase them "on the street," or contact third parties and request the third parties to purchase firearms for them (referred to as a "straw purchase").  I am aware that, in order to arrange/conduct either of these transactions, individuals often communicate via cellular phone with the firearms trafficker and/or straw purchaser.  In so

doing, individuals often exchange photographs of firearms they have for sale, or internet links and/or photographs of firearms they want to purchase.

16. I am similarly aware that such individuals will often conduct internet searches regarding firearms, to include firearms for sale in the area, to research and/or learn more about different types of firearms, and often to research the specific firearms in their possession. Furthermore, I am aware that in general, individuals in illegal possession of firearms often take trophy photographs and/or videos of the firearms they possess.

17. I am also aware that people in general, and those involved in firearms trafficking (either as a distributor or customer) in particular, keep their cellular phones on their persons or in close reach. For drug traffickers and firearms traffickers alike, the cellular phone has become a tool to facilitate criminal activity; specifically, the phone is used to arrange meetings with customers, to speak with fellow co-conspirators, and to coordinate with sources of supply.

18. I am also aware, through my training and experience, that firearms traffickers often conduct business conversations on multiple phones, using several different numbers and accounts. Doing this allows the firearms traffickers to disguise their illicit activities providing only part of the conversation.  An example of this would be a prohibited person requesting a firearm on one phone/account and negotiating a price on a different account.

19. Based on my knowledge, training, and experience, individuals who engage in joint criminal activity frequently use cellular telephones, communication devices, other devices with electronic media storage, and online accounts/applications to further their illegal activities.

20. More specifically, I know that those involved in joint criminal activity such as illegal firearms possession and trafficking use electronic devices to include mobile phones and online accounts/applications to further their objectives by:

a. Communicating with other co-conspirators by talking and by sending e-mail messages, text messages, messages through social media using the internet (e.g., Facebook and Instagram), and messages through mobile applications;

b. Storing contact information of co-conspirators;

c. Taking photographs and recording videos of themselves, co-conspirators, if any, contraband, and places involved in the crime;

d. Using mapping services to plan and commit criminal activities;

e. Using mobile applications to communicate while concealing their identity from law enforcement, co-conspirators, and victims of crimes; and

f. Conducting database searches to collect intelligence on potential victims.

21. Based on my training, knowledge, and experience, I also know that the location of a cellular phone at a particular time (based on GPS records) may constitute evidence of a crime. Such location information allows investigators to determine, for example, whether a particular telephone was in the vicinity of crimes such as narcotics transactions, robberies, and shootings.

22. Indeed, here, location information will, among other things, help the United States to (a) investigate possible connections between the Target Telephone and telephones used by other potential co-conspirators; (b) identify some of the past movements of the users of the Target Telephones within broad (multi-square-mile) geographic regions to identify travel patterns, and (c) identify residences and other locations used in furtherance of the TARGET OFFENSES. This is particularly so given that individuals who participate in criminal activity, including firearms and narcotics trafficking, frequently have cellular telephones with them when they commit their crimes and frequently communicate with one another by cellular telephone and by social media and use of the Internet before and after those crimes. Further, individuals who participate in criminal activity frequently "case" the area prior to committing the crimes to evaluate security measures, victim patterns, and ingress and egress routes.

23.     I know that due to the use of computers, cell phones, and digital devices by individuals and groups committing and planning criminal acts, to search histories, documents, images, and other data including historical cell site location data, and mapping data is created. I also know that certain accounts will have data connected to online applications that are downloaded by the user.  I know that this data can provide evidence about the individual using the computer, cell phones, and digital devices, other co-conspirators involved in the crime, and evidence regarding the planning and execution of the crime.

## TECHNICAL TERMS

24.     Based on my training and experience, I use the following technical terms to convey the following meanings:

- Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

- <u>Digital camera</u>: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

- <u>GPS</u>: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

- <u>PDA</u>: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable

storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

- IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

- Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

25. Based on my training, experience, and research, I know that the **TARGET DEVICE** has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA and to access the internet. In my training and experience, examining data stored on devices of this type to include photographs, chats, messages, emails, and other stored communications can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

26.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time and, in some instances, indefinitely until deleted by the user.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

27.     <u>Forensic evidence</u>.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the device because:

- Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

- Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

- A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

- The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other

information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

- Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

28.    Nature of examination.  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **TARGET DEVICE** consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

29.    Manner of execution.  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

30.    I submit that this affidavit supports probable cause for a search warrant authorizing

the examination of the **TARGET DEVICE** described in Attachment A to seek the items described

in Attachment B.

Respectfully submitted,

<u>/s/ Richard Forte</u>
Richard Forte
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and
Explosives.

Sworn and subscribed before me, *by telephone*
pursuant to Fed. R. Crim. P. 4.1(b)(2)(A),
this 7th day of July, 2026.

_____
HONORABLE CHRISTOPHER R. BROWN
United States Magistrate Judge
Western District of Pennsylvania

## ATTACHMENT A

### Property to be Searched

The black Apple iPhone seized during the June 30, 2026, arrest of Bryan NOEL and is currently in custody of the Pittsburgh Bureau of Police which is located at 1203 Western Avenue, Pittsburgh PA.  This item is pictured below:



This warrant authorizes the forensic examination of the **TARGET DEVICE** for the purpose of identifying the electronically stored information described in Attachment B.

1

**ATTACHMENT B**

**Particular items to be searched and seized**

1.      All records on the **TARGET DEVICE** described in Attachment A that relate to, felon in possession of a firearm in violation of Title 18, United States Code, Section 922(g)(1) and trafficking of firearms in violation of Title 18, United States Code, Section 933(a)(2:

> a.      Incoming and outgoing call and text message logs;
>
> b.      Contact lists;
>
> c.      Photo and video galleries;
>
> d.      Sent and received text messages;
>
> e.      Online searches and sites viewed via the internet;
>
> f.      Online or electronic communications sent and received, including email, chat, and instant messages;
>
> g.      Cent and received audio files;
>
> h.      Navigation, mapping, location, and GPS files;
>
> i.      Telephone settings, including speed dial numbers and the telephone number for the subject telephone and related identifying information such as the ESN for the telephone;
>
> j.      Call forwarding information;
>
> k.      Messages drafted but not sent;
>
> l.      Video and/or audio recordings, including voice messages;
>
> m.      Any and all bank records, transactional records, records of wire transfers, checks, credit card bills, account information, and other financial records;
>
> n.      Any and all information suggesting sudden or unexplained wealth; and

o.      Application data;

p.      Any and all records and information relating to the possession, sale, transfer, use, production, of Postal Arrow Keys;

q.      Any and all records and information relating to the theft of U.S. Mail;

r.      Any and all records relating to creating counterfeit checks;

s.      Any and all records and information relating to communications between conspirators concerning the violations noted above including Mail Theft and Bank Fraud.

2.      Evidence of user attribution showing who used or owned the **TARGET DEVICE** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.